IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No: 2:13-CR-295 |
| Plaintiff | : | JUDGE Sargus |
| vs. | : | 18 U.S.C. §1347 |
| | | 18 U.S.C. §2 |
| | : | |
| ERIC ISAKOV | : | **UNDER SEAL** |
| Defendant. | : | |

INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

I. INTRODUCTION

At all relevant times to this Information, unless otherwise alleged:

1. Defendant ERIC ISAKOV, a licensed Physical Therapist, and the owner and manager of Janis Home Health Care, LLC (hereinafter "Janis"), registered Janis as a Limited Liability Company with the Ohio Secretary of State on January 26, 2006.

2. Janis was a provider of home health care services located at 6161 Busch Boulevard, Columbus, Ohio 43229.

3. Janis became a licensed Medicare Provider on March 28, 2006 and a licensed Ohio Medicaid Provider on October 3, 2010.

## II. THE MEDICARE PROGRAM

4. The Centers for Medicare and Medicaid Services (CMS), is a federal agency within the United States Department of Health and Human Services that administers the national health care program, Medicare, and also administers the Medicaid Program in partnership with the states. The Medicare Program is the federal health insurance program for the aged and disabled established by Congress in 1965, as Title XVIII of the Social Security Act, and codified at 42 U.S.C., Section 1395. Individuals who receive Medicare benefits are referred to as Medicare "beneficiaries."

5. The Medicare Program includes coverage under four primary components:

- **Part A - Hospital Insurance** pays inpatient care in a hospital, skilled nursing facility, psychiatric hospital, hospice and home health care.

- **Part B - Supplementary Medical Insurance** pays for outpatient services and supplies not covered by part A, such as physical therapy, some home health care, physician services, diagnostic and clinical laboratory tests, ambulance services and medical equipment and supplies.

- **Part C - Advantage Plans** are managed care plans that CMS pays a monthly capitation payment to provide all Medicare covered services to enrolled Medicare beneficiaries.

- **Part D - Prescription Drug Program** provides prescription drug coverage.

6. Entities who provide health care services are reimbursed by Medicare and are called Medicare providers. A Medicare provider obtains a unique identification number, called a "provider number," by completing and submitting an application to Medicare. Medicare providers submit claims for payment to a Medicare Administrative Contractor either directly or through a billing company. Most claims are now submitted electronically; however paper claims are submitted on a standardized form called a "CMH-1500". Whether the claim is submitted on paper or electronically, providers are required to certify that (1) the services provided were

2

medically indicated and necessary, (2) the services were personally provided by the person signing the form, or by one of his/her employees acting under the signer's direction, and (3) the information submitted for billing is true, accurate and complete. Providers are further required to only submit claims that are in compliance with Federal and State laws, rules and regulations, including anti-kickback laws. A Medicare claim is required to set forth, among other things, the beneficiary's name and Medicare identifier, the beneficiary's diagnosis that supports the medical necessity of the service, the date services were provided, the cost of the services, and the name and identification of the physician, or other health care provider who ordered the services. Medicare providers are paid either through a paper check mailed through the U.S. mail system, or through Electronic Funds Transfer (EFT) into a predesignated bank account.

### III. THE MEDICAID PROGRAM

7. Medicaid is a federal health care benefit program designed to provide medical services, equipment, and supplies to the poor pursuant to the Social Security Act (Title 42, United States Code, Section 1396, et seq.). Medicaid is a health care benefit program as defined in 18 U.S.C. § 24(b). Approximately 60% of the funding for the Ohio Medicaid program is supplied by the United States Department of Health and Human Services. The Medicaid program is administered by the State of Ohio, through the Ohio Department of Job and Family Services (ODJFS). ODJFS pays Medicaid claims submitted to it by valid Medicaid providers.

8. A participating Medicaid provider is a person or business, who agrees to (1) provide the service, (2) submit the claim, and (3) accept as payment in full the amount paid by the Ohio Medicaid Program. The provider signs a Medicaid participation agreement, which requires him to keep records necessary to fully disclose the services provided to Medicaid patients. Medicaid assigns each provider a unique billing Provider Identification Number (PIN). Providers agree to

3

know Medicaid reimbursement policies, which are communicated via regulations, manuals and newsletters.

9. To receive Medicaid reimbursement for covered services, the provider submits a Health Insurance Claim form (CMS-1500) by mail or electronically submits billing data to ODJFS, which pays the provider either by mail or EFT. Medicaid pays participating health care providers on the basis of reasonable charges for covered services provided to beneficiaries.

10. Medicaid providers agree to bill only for services actually rendered that are medically necessary to diagnose and treat illness or injury and for which the provider maintains adequate documentation. Medicaid providers also agree to provide only services that are in compliance with Federal and State laws, rules and regulations, including anti-kickback laws. Medicaid requires health care providers to retain records of services for six (6) years from the date of payment for such services.

11. By law, the Medicaid program is the payer of last resort, that is, all other legally-obligated third-party sources must pay a claim before the Medicaid program pays for the care of an eligible individual.

## IV. HOME HEALTH CARE

12. Home health care is covered under the Part A and B Medicare benefit and is provided in the beneficiary's home. It consists of part-time, medically necessary skilled care (nursing, physical therapy, occupational therapy, and speech therapy) that is ordered by a physician. If patients are eligible for skilled services, they can also receive part-time assistance with personal care needs by a home health aide.

13. To qualify for the Medicare home health care benefit, under Section 1814(a)(2)(C) and Section 1835(a)(2)(A) of the Social Security Act, a Medicare beneficiary must:

4

- Be confined to the home (homebound);
- Receiving services under a plan of care established and periodically reviewed by a physician;
- Be in need of skilled nursing care on an intermittent basis or physical therapy or speech therapy pathology, or have a continuing need for occupational therapy.

A patient must meet each of the criteria to be eligible to have payment made for services received. "An individual does not have to be bedridden to be considered confined to the home, however, the beneficiary's condition should be such that leaving home would require a considerable and taxing effort.

14. Home health care services must be provided under a Plan of Care (CMS 485) established and approved by a physician. The Plan of Care must indicate the type of services to be provided to the patient, the frequency of the services, and all pertinent diagnoses. The Plan of Care must be reviewed and signed by the doctor who established the Plan at least every 60 days. Each review of a patient's plan of care must contain the signature of the physician and the date of review. Medicare will only pay for home care services if a physician certifies and recertifies the need for services.

15. The Medicare Program pays for home health care under a Prospective Payment System (PPS). The home care PPS reimburses services based upon the individual resource needs of the beneficiary during a 60 day episode period, not on a per visit basis. The beneficiary is assessed by the provider and that assessment is called the Outcome and Assessment Information Set (OASIS). The OASIS evaluates the beneficiary's clinical and functional status and their potential needs for service. The assessment is entered into software that generates a payment code that determines payment for the patient's home health care episode. Payment rates are based on patient assessment and resource needs (e.g., diagnosis, clinical factors, functional factors, and services needs).

16. The Ohio Medicaid Program pays for home health care under a Fee for Service (FFS) system which is a traditional billing and reimbursement method in which providers charge for each medical service or unit provided to a patient.

17. Home health skilled nursing services must be provided by a registered nurse (RN), or a licensed practical nurse (LPN) under the supervision of a RN. Nursing services are typically recorded in documents commonly referred to as "nursing notes". These documents record the dates, times and nature of the services provided by the nurse.

18. Home health nursing services must be performed within the nurses scope of practice, must be provided and documented in accordance with the consumer's plan of care, must be provided in a face-to-face encounter, must be medically necessary and provided in accordance with Federal and State laws rules and regulations, including the anti-kickback laws. Medical services are not covered when the visit is solely for the supervision of the home health aide, but may include infusion therapy for the administration of medications, nutrients or other solutions.

19. Home health aide services are performed by a home health aide employed or contracted by the agency providing the service. The home health aide cannot be the parent, step-parent, foster parent, or legal guardian of a consumer (patient) who is under eighteen (18) years of age, or the consumer's spouse. Home health aide services are typically recorded in documents commonly referred to as "time sheets".

20. Home health aide services are provided and documented in accordance with the consumer's plan of care, must be provided in a face-to-face encounter, must be medically necessary to care for the consumer's illness or injury, must be necessary to facilitate the nurse or therapist in the care of the consumer's illness or injury or help the consumer maintain a certain

6

level of health in order to remain in the home setting, and must be provided in accordance with Federal and State laws, rules and regulations, including anti-kickback laws.

21. Home health related services can include, but are not necessarily limited to, bathing, dressing, grooming, hygiene, including shaving, skin care, foot care, ear care, hair, nail and oral care, that are needed to facilitate care or prevent deterioration of the consumer's health, and including changing bed linens of an incontinent or immobile consumer.

22. Skilled therapy services through a home care agency must be provided by a licensed physical, occupational or speech therapist who meets the requirements specified in Title 42 of the Code of Federal Regulations, Section 484.4 – Personnel Qualification for Home Health Services. Any therapy services offered must be done in accordance with the plan of care.

23. Services furnished by a qualified physical therapy assistant (PTA) or qualified occupational therapy assistant (QTA) may be furnished under the supervision of a qualified physical or occupational therapist. A PTA or QTA performs services planned, delegated and supervised by the therapist, assists in preparing clinical notes and progress reports, and participate in educating the patient and family, and in in-service programs.

24. Skilled therapy services must be reasonable and necessary to the treatment of the patient's illness or injury within the context of the patient's unique medical condition. Documentation should support all of the above.

## V. THE HEALTH CARE FRAUD SCHEME

25. Beginning on or about January 1, 2009 and continuing through March 26, 2013, in the Southern District of Ohio, Defendant ERIC ISAKOV, unlawfully, willfully, and knowingly made false statements in connection with the delivery of, and payment for, health care benefits,

and devised a scheme and artifice to defraud the Medicare Program to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

26. It was part of the scheme for Defendant ERIC ISAKOV to pay "kickbacks" to multiple patients by providing them with gift cards and gaming systems , such as WII Nintendo, in return for the patient agreeing to sign-up with Janis for home health services.

27. It was further part of the kickback scheme that Defendant ERIC ISAKOV paid patients uncovered costs for Durable Medical Equipment (hereinafter "DME"), such as walkers, rollers and canes. For example, if Medicare did not cover the entire cost of an item, Defendant ERIC ISAKOV would pay the difference between the amount paid by Medicare and the amount not covered by Medicare. It was also part of the scheme that the Defendant ERIC ISAKOV would have the bills for the uncovered costs sent directly from the DME supplier to Janis.

28. It was further part of the kickback scheme that Defendant ERIC ISAKOV would pay monthly emergency monitoring services for several patients in return for their agreement to allow Janis to provide home health services.

29. It was further part of the scheme that Defendant ERIC ISAKOV would pay kickbacks in the form of gift cards and cash to service coordinators of senior living facilities and employees of physician groups in exchange for the referral of resident/patients to Janis for home health care services.

30. It was further part of the kickback scheme that Defendant ERIC ISAKOV would compensate physicians for patient referrals. As part of the scheme Defendant ERIC ISAKOV would conceal the kickback payments by providing the physicians with the services of Janis employees without receiving any compensation from the physicians for such services, or by

8

paying rent for office space which Defendant ERIC ISAKOV never used or intended to use for office space.

31. It was further part of the scheme that Defendant ERIC ISAKOV paid service coordinators over $ 30,000 for patient referrals.

32. It was further part of the scheme that between January 1, 2010 and March 26, 2013, Defendant ERIC ISAKOV and Janis made a profit from Medicare and Medicaid claims of approximately $900,000 as a result of the kickback scheme.

## COUNT 1
## [18 U.S.C.§1347]

33. Paragraphs 1 through 32 of the Information are hereby incorporated by reference as part of this count as if fully set forth herein.

34. On or about January 1, 2009, and continuing to on or about August 28, 2010, in the Southern District of Ohio, Defendant ERIC ISAKOV, knowingly and willfully executed a scheme and artifice to defraud the Medicare Program described above, and did so execute such scheme by submitting claims for reimbursement for patient L.M. for the purpose of defrauding, or obtaining by false or fraudulent pretenses, representations or promises, money owned by, or under the custody or control of the Medicare Program, in connection with the delivery of, or payment for, health care benefits, items, or services.

In violation of 18 U.S.C. § 1347 and § 2.

CARTER M. STEWART
UNITED STATES ATTORNEY

BRENDA S. SHOEMAKER
Financial Crimes Chief